EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JESÚS RIVERA TORRES y LUIS SANTANA PABÓN, acusados y apelantes.

Núm. 7370.—*Sometido:* Abril 13, 1939. *Resuelto:* Abril 28, 1939.

*J. Valldejuli Rodríguez,* abogado de los apelantes; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

La Corte de Distrito de Humacao halló a los acusados Jesús Rivera Torres y Luis Santana Pabón culpables de infringir las disposiciones de la Ley núm. 25, aprobada en 17 de julio de 1935 (Leyes de 1935, (2) pág. 153), y les sentenció a cumplir sesenta (60) días de cárcel a cada uno.

---

* NOTA: Véase el prefacio.

■ La denuncia, que originalmente fué radicada en la Corte Municipal de San Lorenzo, dice en lo pertinente como sigue:

"Yo, José L. Díaz, P. I. Núm. 84...., vecino de Juncos, Puerto Rico, ...., calle de Martínez...., número...., mayor de edad.... años, formulo denuncia contra Benigno Rosado Hernández, Jesús Rivera Torres y Luis Santana Pabón por delito Inf. Sec. 3 y 4 de la Ley Núm. 25 aprobada en julio 17, 1935, sobre Bolita, *Boli-pool,* etc., para declarar dichos juegos estorbo público y para otros fines, cometido de la manera siguiente: Que en 29 de Sept. a 4:30 P. M. de 1937, y en sitio Caracol de Juncos, Puerto Rico, del Distrito Judicial Municipal de San Lorenzo, que forma parte del Distrito judicial de Humacao, P. R.

"Los mencionados acusados Benigno Rosado Hernández, Jesús Rivera Torres y Luis Santana Pabón, allí y entonces de manera ilegal, voluntaria y maliciosamente, y obrando de común acuerdo, el primero alquilando una habitación de su casa al Sr. Rivera Torres por $1.50 semanal a sabiendas que se dedicaba al juego de Bolita; el segundo como dueño y director de una Banca de Bolita llamada "Amparo" y el tercero como ayudante de Jesús Torres Rivera, establecieron una oficina que dedicaron al juego de Bolita; usando otras personas que vendían los números al público, o sea *tickets* de bolita; y tenían allí libretas, lápices, recibían el dinero de los vendedores de números; y entre 4 y 5 de la tarde de cada día, con tres candungos con 10 bolos cada uno, sacaban un bolo de cada candungo formando con los tres números la cifra que conponía el número premiado. Todo a sabiendas de que estos objetos los utilizaban para el juego ilegal de la Bolita. Mediante orden de allanamiento se ocupó en registro efectuado, una bolsa conteniendo 55 libretas de las usadas en venta de números. Y al Sr. Jesús Rivera Torres le fueron ocupados una bolsa conteniendo $10.49; $7.00 más en billetes; 1 pluma fuente Parker y 2 lápices; 1 copia de citación por juego de Bolita contra Lorenzo Aponte y copia de moción sobre sobreseimiento de un caso por juego Bolita. Al Sr. Luis Santana Pabón se le ocuparon $3.00 y 1 libretita verde con apuntes por entradas de dinero; además se ocuparon 32 centavos regados. Todo esto se pone ante la corte como evidencia, así como declaración jurada de Benigno Rosado Hernández y la orden allanamiento."

Los acusados señalan en el alegato cuatro errores que, aunque frívolos, pasamos a estudiar. El primero consiste en

haber declarado la corte sentenciadora sin lugar una excepción perentoria de falta de hechos basada en que en la denuncia no se alega que los acusados fueran sorprendidos portando, conduciendo ·o vendiendo papeletas, billetes, *tickets*, libretas, listas de números o implementos de los que se utilizan en el juego de la bolita, o que fueran dueños, apoderados, agentes, encargados, directores o administradores de los juegos prohibidos por la Ley núm. 25 de 1935.

Nada más desprovisto de fundamento. En la denuncia se alega claramente que "los acusados Benigno Rosado Hernández, Jesús Rivera Torres y Luis Santana Pabón allí y entonces de manera ilegal, voluntaria y maliciosamente, y obrando de común acuerdo, el primero alquilando una habitación de su casa al Sr. Rivera Torres por $1.50 semanal a sabiendas que se dedicaba al juego de bolita; *el segundo como dueño y director de una banca de bolita llamada Amparo y el tercero como ayudante de Jesús Torres Rivera establecieron una oficina que dedicaron al juego de bolita . . . .* ", etc. (véase supra). O sea, en la denuncia se alegan con bastante precisión hechos constitutivos del delito provisto en la sección 4 de la ley que lee en lo pertinente del modo que sigue:

". . . y todo dueño, apoderado, agente, encargado, director o administrador de los juegos prohibidos por esta Ley, convicto que fuere, podrá ser castigado a pagar una multa no menor de cien (100) dólares ni mayor de doscientos (200) dólares, o a sufrir cárcel por un término no menor de sesenta (60) días ni mayor de cuatro (4) meses; . . . ." etc.

El primer señalamiento debe ser desestimado.

■ El segundo imputa a la corte sentenciadora grave error en la apreciación de la evidencia. El policía insular José L. Díaz declaró que, provisto de una orden de allanamiento, entró con otros compañeros y por la fuerza a una casa en la salida del Caracol, de Juncos, donde los acusados tenían alquilada una habitación en que se dedicaban a jugar la bolita; que dentro, encontró a los dos acusados, a Benigno

Rosado y a muchos vendedores de papeletas reunidos; que todos trataron de huir lográndolo los acusados por una ventana y llevándose con ellos las libretas y el dinero que había sobre la mesa, y que les fueron ocupados por Torres, otro policía que estaba en el patio, adonde fueron a dar los acusados. A preguntas del abogado Piñero, uno de los defensores, declaró que también halló candungos y bolas desparramados por el piso.

Es cierto que el policía Díaz fué el único testigo ofrecido por el fiscal, pero también lo es que su declaración fué corroborada por los de la defensa. El policía Vidal E. Torres, testigo de defensa, dijo que se había quedado fuera de la casa, y que arrestó a los acusados cuando se tiraron por la ventana, ocupándoles allí las libretas y el dinero que tenían en su poder. El error apuntado no existe.

■ En el tercero se le imputa al juez sentenciador pasión, prejuicio y parcialidad al dictar sentencia, y ello, porque al hacerlo, se expresó así:

"... y sentencia a cada uno de dichos acusados a cumplir sesenta días de cárcel manifestando la corte que impone cárcel en este caso y no multa porque entiende que de alguna manera es necesario terminar con una situación altamente perjudicial a la sociedad."

El hecho de que la corte inferior para "terminar con una situación altamente perjudicial a la sociedad" sentenciara a los acusados a sufrir 60 días de cárcel y no a pagar una multa, no demuestra que actuara con pasión, prejuicio y parcialidad. Hemos leído la transcripción de la evidencia y no hay en toda ella indicio alguno de tal actitud. Si para terminar con la tal situación la corte hubiera declarado a los acusados culpables, **sin serlo de** acuerdo con la prueba, entonces sí habría algún fundamento para declarar que actuó en la forma que se le imputa en este señalamiento. Convencida la corte de la culpabilidad de los acusados y justificada por la prueba la convicción de los mismos, el hecho de que la corte, haciendo uso de su discreción, haya juzgado conve-

niente imponer pena de prisión en vez de multa, para corregir el mal existente, no es por sí solo suficiente para sostener el error señalado, que debe ser desestimado.

Por el cuarto señalamiento se afirma que la corte sentenciadora contravino el espíritu y la letra de la Ley núm. 25 de 1935 al imponerle a los acusados pena de cárcel. Todo el argumento de los apelantes en apoyo de este señalamiento se reduce a que como la ley habla de multa primero y de cárcel después (véase supra), ellos dicen que ". . . . donde aparezca primeramente como pena la imposición de una multa no puede (el juzgador) saltar por encima de este precepto e imponer cárcel a menos que el estatuto expresamente dé esa facultad al magistrado."

Una lectura superficial de aquella parte de la ley que se relaciona con este señalamiento (véase ante) demuestra inmediatamente que el razonamiento carece en absoluto de justificación en derecho. *Debe confirmarse la sentencia recurrida.*